# Richmond.

BOARD OF SUPERVISORS OF NOTTOWAY COUNTY v. POWELL.

March 21, 1907.

1. EQUITY—*Bill to Correct Treasurer's Account—Discovery—Surcharge and Falsification.*—A bill filed by a board of supervisors of a county against a county treasurer charging that he had made certain settlements with the board which were erroneous, and pointing out the errors complained of by reason of which he had failed to account for funds due the county from delinquent taxes, and had charged a greater commission on certain funds than the law allows, and praying for a reference to a commissioner to settle the accounts of the treasurer, and that he be required to produce before such commissioner his books and papers to enable him properly to state the accounts, and that he be required to pay the amount found due by him, and for general relief, is in no sense a bill of discovery, but a bill to surcharge and falsify the accounts of the treasurer, and is subject to the rule governing such bills which requires the specific grounds of surcharge and falsification to be stated in the bill.

2. COUNTY TREASURERS—*Delinquent Taxes—Credits to Treasurer—Accounting—Suit by Board of Supervisors.*—A county treasurer is not entitled to receive credit by any delinquent taxes until and unless the original tickets for such taxes have been filed with the clerk of the court. When a proper list is filed the treasurer is liable for all moneys received by him on tax tickets contained in such lists. The board of supervisors of the county may maintain a bill in equity and have a reference to a commissioner in chancery with regard to such tickets and collections, and hold the treasurer responsible, to the extent of the county's interest therein, for all such tickets as were actually collected by him.

3. COUNTY TREASURERS—*Delinquent Taxes—Default of Treasurer—Suit by Board of Supervisors.*—Section 612 and cognate sections of the Code (1904) providing for the collection of delinquent taxes from taxpayers, apply only to cases in which the lists have been returned by the treasurer in good faith in conformity to law,

and afford no remedy against a treasurer who has *ex maleficio* collected tax tickets in the delinquent lists. The board of supervisors can alone hold a treasurer responsible for such derelictions of duty so far as the county levy is concerned. These statutes afford remedies against delinquent taxpayers and their property, but none against a defaulting treasurer.

4. COUNTY TREASURERS—*Excessive Charges—Remedy at Law.*—If the only claim of a board of supervisors against a county treasurer. is for an excess of commissions retained by him, the remedy is at law, and not in equity.

Appeal from a decree of the Circuit Court of Prince Edward county. From a decree dismissing the bill on demurrer the complainant appeals.

*Reversed.*

The opinion states the case.

*H. E. Lee* and *Caskie & Coleman,* for the appellant.

*Meade Haskins* and *C. V. Meredith,* for the appellee.

WHITTLE, J., delivered the opinion of the Court.

The court concurs in the dissenting opinion of the President, to be handed down in this case, except with respect to the charges of the bill involving the alleged failure of the defendant. in error, J. L. Powell, as treasurer of Nottoway county, to return with his delinquent lists the original tax tickets for each and all the items embraced therein, and to account for subsequent collections alleged to have been made by him on tax tickets included in such lists.

We are of opinion that the treasurer was not entitled to receive credit by any delinquent taxes until and unless the original tax tickets for such taxes were filed with the clerk; and also that he is liable for all moneys received by him on tax tickets contained in the delinquent lists. We are further of opinion that the plaintiff in error, the Board of Supervisors of Notto-

way county, is entitled to maintain the bill in this aspect of the case, and, upon the exhibits filed therewith, to have a reference to a commissioner in chancery with regard to such tickets and collections, and to hold the treasurer responsible, to the extent of the county's interest therein, for all such tickets as were actually collected by him.

We are further of opinion that section 612, Virginia Code (1904), and cognate sections, providing for the collection of delinquent taxes from taxpayers, apply only to cases in which the lists have been returned by the treasurer in good faith in conformity to law, and that they afford no remedy against a treasurer who has *ex maleficio* collected tax tickets included in the delinquent lists. The Board of Supervisors can alone hold a treasurer responsible for such derelictions of duty so far as the county levy is concerned. The statutes invoked have no application to such case—they afford remedies against *delinquent taxpayers* and their property, but none against a *defaulting treasurer*.

For these reasons the decree sustaining the demurrer and dismissing the bill must be reversed, and the case remanded for further proceedings to be had therein not in conflict with the views herein expressed.

KEITH, P. (dissenting):

The Board of Supervisors of Nottoway county filed their bill against J. L. Powell, in which they aver that as treasurer of Nottoway county he collected the taxes and levies for the year 1891 and for each subsequent year down to and including the year 1903, making from time to time statements thereof to the Board of Supervisors, which were approved by said Board. The bill charges that these accounts were erroneous in the following particulars: That in each of the statements there appears a credit to the treasurer, "By amount vouchers presented by treasurer, examined by the board, found correct, and filed in the

records" that included in this item was the amount of taxes for the year for which the accounts were being settled which were returned delinquent by the treasurer; that the treasurer was required by law to return with the delinquent list the original tickets for each and every item embraced in said list, and that in no instance was this requirement complied with, the treasurer failing to return said tickets or any of them; that this failure upon the part of the treasurer to file the tickets as required by law was not discovered until some time in the year 1903, when the Board demanded of the treasurer that they should be filed; that after some delay the treasurer did deposit with the clerk some of said tickets, which he stated were all that were then in his possession, but an examination thereof disclosed the fact that a considerable number of the tickets embraced in the delinquent list had not been filed. With the bill is filed an exhibit, marked "A," showing the aggregate of the tickets for each year which were not deposited with the clerk as required by law, and the charge is that the treasurer was not entitled to receive credit for any delinquent taxes until and unless the original ticket was filed with the clerk. The bill further alleges that after the returns of delinquent taxes were made and Powell had received credit for the delinquent list returned by him, he proceeded to collect from some of the persons embraced in such delinquent list amounts due by them, making out and delivering to them duplicate tickets for said sums. An exhibit, marked "B," is filed with the bill, containing a list of such collections as were within the knowledge of complainant. It is claimed that Powell is indebted to the county of Nottoway for the amount of the tickets not returned by him, with interest, and for the amount of all delinquent taxes collected by him, with the interest and penalties which the law imposes up to the time the same were collected, and with interest upon the aggregate from the time of such collection until the same is paid over to the county.

It appears that the revenues of the county of Nottoway ex-

ceeded $10,000 and were less than $15,000. The compensation to the treasurer, as fixed by law, would be five *per cent.* with two *per cent.* added on all the taxes and levies remaining unpaid on December 1st and collected by him; and it is charged in the bill that Powell received and appropriated three *per cent.* instead of two, and demand is made that he refund the excess of one *per cent.* An exhibit is filed with the bill showing the amounts collected upon which the excess of one *per cent.* commission was charged, making in the aggregate the sum of $369.56 as the amount which the plaintiff is entitled to recover of the defendant under this head.

The bill further states that in the statement rendered by Powell as to the taxes for 1891, it does not appear what amount was collected prior to December 1, and nothing is charged to him on account of the five *per cent.* penalty which was added to such part of said taxes as were not collected until after December 1, and that Powell should be held accountable for said sum, with interest thereon from the date of said settlement.

The bill concludes with a prayer that the cause be referred to a commissioner to settle the accounts of Powell as treasurer of Nottoway county, to ascertain and report what sums are due and unpaid by him to the various funds which have passed through his hands, together with any other account which may be deemed right and proper; that he be required to produce before the commissioner all the books and papers in his possession which will show the items composing the various sums credited to him in the statements hereinbefore referred to, that any errors existing may be corrected; that the amount due by Powell to each of the funds which have passed through his hands may be ascertained and settled; that he may be required to pay the same; and for further and general relief.

To this bill the defendant demurred, and the Circuit Court of the county of Prince Edward, to which the case had been removed for trial, sustained the demurrer; and the case is before us upon appeal.

In my view of the case the bill is in no sense a bill of discovery. It is to be considered as a bill to surcharge and falsify the accounts of Powell as treasurer of Nottoway county, which he had regularly settled from time to time, and which had been approved and confirmed by the Board of Supervisors, as provided by law.

In *Corbin* v. *Mills,* 19 Gratt., at page 465, Judge Joynes, speaking of surcharge and falsification of the accounts of an executor, says that such as have been "regularly settled in the mode provided by law are to be taken as *prima facie* correct. They are liable to be impeached on specific grounds of surcharge or falsification to be alleged in the bill, but the court will not decree an account upon a general allegation that the settled accounts are erroneous. This rule not only results from the presumption which the law makes in favor of the correctness of a settled account, but it is necessary to prevent surprise to defendants, and to give them the advantage of their answer, to which they are entitled, on the principles which govern equity practice. When an account has been ordered upon a proper bill, an additional objection to the settled accounts may be discovered in the progress of the case." And with respect to these after-discovered errors, in order to save time and expense, the plaintiff is allowed to raise the objection before the commissioner with a proper specification in writing, and the defendant is allowed to meet the objection by proper affidavit, to which the same weight will be attached as would have been given to an answer if the matter had been alleged in the bill.

It becomes necessary to examine the specific grounds upon which it is sought to impeach the correctness of the accounts in this case. The first ground of attack is that the treasurer did not file the original tickets for the items embraced in the delinquent list for which he received credit. This, it may be conceded, was an irregularity in the accounts which should not have been passed, and the credit should not have been allowed by the Board and should not have been approved by the County

Court until the law was complied with; but unless it is averred and proved that a loss resulted to the county from this failure to file the tickets it cannot constitute in itself a ground of surcharge and falsification; for it will be presumed that each and every officer charged with a duty with respect to those accounts performed that duty, and that no credit was allowed except' upon due proof. It is difficult to conceive how there could have been any loss of revenue to the county from this source, except in so far as it enabled the treasurer (upon the theory·that he retained in his possession the original tax tickets embraced in the delinquent list) to collect the same after receiving credit for them as delinquent, in which event they would be the subject of consideration under the next head, which is, that after the returns were made and the treasurer had received credit by the delinquent list returned by him he proceeded to collect from the persons embraced in such delinquent list amounts due by them, making out and delivering in most if not all cases duplicate tickets for said sums. And this brings me to the consideration of the most important question embraced in this litigation.

Section 605 of .the Code of Virginia (1887) provides that "The treasurer, after ascertaining which of the taxes and levies assessed in his county or city cannot be collected, shall, not later than the first day of July in each year, make out lists of three classes, to-wit: . First, a list of property on the commissioner's land-book improperly placed thereon, or not ascertainable, with the amount of taxes and levies charged on such property; secondly, a list of other real estate which is delinquent for the non-payment of the taxes and levies thereon; and, thirdly, a list of such of the taxes and levies so assessed, other than on real estate, as he is unable to collect, . . . "

Section 608 provides that each of the lists mentioned in section 605 shall be presented to and examined by the county or corporation or hustings court, and that the court, being satisfied of the correctness of said list and that the taxes and levies

are correctly extended, shall direct the clerk to certify copies therof to the auditor of public accounts, setting forth the aggregate amount of state taxes shown by said list, to the treasurer of the state, and a copy of said list to the commissioner of the revenue, who shall correct his books accordingly; but said lists .shall not be presented to the court nor allowed unless they have been first submitted to the commissioner of the revenue for the county, district or city to which they relate, and are accompanied by the written opinion of the commissioner touching the propriety of such lists, verified by his oath, and shall also have been submitted, in the case of a county treasurer, to the board of supervisors of said county and are accompanied by the certificates of said board touching the propriety of such lists and each case therein contained. The original lists and the tickets for taxes and levies corresponding therewith shall be preserved by the clerk in his office.

In order to obtain credit, therefore, for delinquent taxes, the treasurer must have his list approved by the commissioner of the revenue, by the board of supervisors, and finally by the court of the county, or the hustings or corporation court of the city. When all that is done, and the copies are certified to the auditor, section 608· provides that the treasurer shall not receive any of the taxes or levies mentioned in the first and third lists, but they may be paid into the public treasury, and it shall be the duty of the auditor when such delinquent taxes and levies are so paid or received by him under section 612 to credit the respective counties and cities with the amount of county and city levies, respectively, and other local taxes ,including also such as have been received for years previous, and pay the same over to the county or city treasurer upon an order of the board of supervisors of the county or the council of the city; or the capitation and personal property tax and levies may be paid to the clerk of the county or corporation or hustings court, who shall, in a book to be kept in his office for the purpose, enter the name of each person who pays any part of said taxes or

levies, the amount paid by him, and the date of such payment; and on the first day of June and December of each year shall transmit to the auditor a copy of the entries so made, which shall be verified by his oath.

By section 612 it is provided that the auditor shall, within sixty days after receiving said third list, or as soon thereafter as practicable, place certified copies of the same in the hands of any sheriff, sergeant, constable or collector (except that such lists shall not be placed in the hands of any officer who returned the same), who shall collect the same, giving to each person from whom such collection is made a receipt specifying the several items of taxes and levies so collected, and account to the auditor within one year after the list is placed in his hands.

There is no question here with respect to the first class mentioned in section 605. With respect to the third class it plainly appears from the extracts given from sections 608 and 612 that after the delinquent list has been approved by the proper officials and a copy transmitted to the auditor there is no power or authority left in the treasurer to collect any part of the taxes appearing upon said lists. Payment can only be made to the clerk, who in turn reports to the auditor, or to some person designated by the auditor under section 612 to receive them, whose duty it is also to report directly to the auditor. The auditor, by virtue of the exception contained in section 612, could not have authorized Powell to make collection of delinquent taxes. He is excluded in express terms from eligibility for selection by the auditor for that purpose. But it was argued that having intruded himself into this business, contrary to law, by operation of the doctrine applicable to executors *de son tort* and guardians *de son tort* he became responsible for the funds thus wrongly received. Let it be conceded. To whom would he be accountable? Not to those who were forbidden to receive them, but to those clothed by the law with the power and duty of collecting them. There was no lawful authority which could

receive and give acquittance for taxes embraced in the delinquent list except the auditor, some officer designated by him, or the clerk of the court, all of whom were required by express statute to report to the auditor. If, therefore, Powell, contrary to law, collected taxes embraced in a delinquent list, for which he had already received credit, he should be held accountable, but accountable only to the official clothed by law with authority to receive such delinquent taxes.

What I have said sufficiently disposes of taxes on personal property, and brings me to a consideration of delinquent land taxes.

It is to be observed in the first place that the bill makes no discrimination with respect to land taxes and personal property taxes. For aught that appears in the bill, all the taxes upon the delinquent list charged as improperly collected by the treasurer, may have been upon personal property and the capitation tax; and if that be so, then all that is stated in the bill upon this subject may be true and yet give rise to no cause of action in favor of the plaintiff; for we believe it to be a rule, without exception, that a pleading is bad if it states a case which may be true without imposing liability upon the party sought to be charged.

But to deal more specifically with the subject: Section 636 provides that "There shall be a lien upon all real estate for the taxes assessed, and county, city and town levies assessed thereon, and interest upon such taxes and levies, at the rate of six *per centum per annum,* from the fifteenth day of December, in the year in which the same may have been assessed, for the period of five years, unless sooner paid." And it is made the duty of the auditor of public accounts to keep a record of all real estate which since the 10th of March, 1875, shall have been returned delinquent for non-payment of taxes or county levies. By section 637 clerks are required to deliver to treasurers a copy of the list of delinquent real estate at the time they certify the delinquent list to the auditor of public accounts; and

within thirty days after receiving such copy from the clerk the treasurer is required to advertise the property for sale, or so much thereof as may be necessary to pay the taxes on it. By section 638 it is provided that if the taxes, levies, interest, costs and charges are not previously paid the treasurer shall make sale. And by section 642 the treasurer of each county and city is required to make a report of sales made by him to the circuit court of the county, or the corporation or hustings court of his city, of all the lands sold by him, and also a list of all persons whose lands have been returned delinquent and who have paid such delinquent taxes or levies to such treasurer prior to such sale; and the clerk is required to indorse such payment upon the list in his office opposite the name of the tax-payer who is returned delinquent. By section 645 the court, if it finds the list to be correct, confirms the report of the sales and orders it to be recorded and indexed in the delinquent land-book; and by section 647 the clerk is required to certify a copy of this report to the auditor of public accounts within thirty days after the date of such confirmation by the court, and upon receipt of the copy the auditor is directed to charge the treasurer with whatever is due the Commonwealth on account of sales so made by him, less ten *per cent.* commission, which amount the treasurer shall pay into the treasury within sixty days from the date of sale. It is also made the duty of the clerk to lay a copy of said report before the board of supervisors of the county, and in case of a sale for a city or town, before the council of such city or town, at the next meeting thereof, who shall charge the treasurer with whatever is due on account of said sales for levies, less a commission of ten *per cent.*

Now there is in this bill no suggestion that any sale was made or that any steps looking to a sale were taken by the defendant. There is no averment or suggestion that any part of the delinquent list which he is charged with having collected was received by him as the result of a sale of delinquent lands, or as having been voluntarily paid by the delinquent taxpayer

in order to prevent a sale of his real estate. It may be, of course, that a part, or, indeed, all of the taxes reported delinquent and subsequent to that report collected by the defendant were for real estate, but the bill does not so state, and, I repeat, that every averment in the bill may be true and yet impose no liability upon the defendant with respect to the collection of delinquent taxes; for *non constat* the whole of the taxes so collected were upon personal estate, which we have seen the treasurer had no authority to collect, and for which, if collected by him without authority, he is responsible, not to the plaintiff, but to the auditor of public accounts. If he collected levies made by the county upon real estate he would be, perhaps, responsible to the board of supervisors, if properly impleaded for the sums so collected, but as to this I express no opinion, as that case is not before us.

With respect to the charge made by the bill that the defendant collected three *per cent.* instead of two *per cent.* upon taxes and levies unpaid upon the 1st of December, standing alone, this averment could not give jurisdiction to a court of equity. The exhibit filed with the bill shows the sums for each year upon which the excessive commission was charged, and involves no question which a court of law is not as competent to deal with as a court of equity. If the facts set forth in the bill with respect to this item are true defendant would seem to be liable for the amount claimed, and he would, perhaps, be well advised were he to pay it without further controversy. But: if he has a defense not appearing upon this record he has a right to make it before a jury.

Upon the remaining ground of surcharge and falsification stated in the bill, that the treasurer has not accounted for the five *per cent.* penalty on such part of the taxes for 1891 as were not collected until after December 1st, it is sufficient to say that the bill does not allege that there was any tax received by him to which such penalty was by law attached; and there being no charge that he collected or should have collected a penalty

of five *per cent.,* except in a purely argumentative way, this item need not be further considered.

Without meaning at this time to say whether or not appellant can present a case of which a court of equity will take jurisdiction I am of opinion that the decree of the Circuit Court should be affirmed, but with leave to appellant to amend its bill, should it desire to do so, or to dismiss the suit without prejudice to its right to proceed at law.

CARDWELL, J., concurs with KEITH, P.

*Reversed.*